SCHREIBER v. GEM STOPPER CO.   (No. 7256.)

(Supreme Court, Appellate Division, First Department.   April 30, 1915.)

ATTACHMENT ⬤═➤107—EXISTENCE OF CAUSE OF ACTION—DAMAGES FOR BREACH OF CONTRACT—SPECULATIVE DAMAGES.

Affidavits for attachment against a foreign corporation alleged a contract by which defendant made plaintiff sole and exclusive agent for an article manufactured by it; that during 17 months under the contract he sold to one purchaser an amount netting him an average monthly profit of $1,046; that such purchaser had always used and continued to use said article, and the loss of profits for the balance of the term was estimated at the same rate of $1,046 per month, and the total given, which was stated to be the value of the agreement and measure of plaintiff's damages. *Held*, that the affidavits showed facts from which it might be fairly presumed that plaintiff would suffer damages in a fixed sum, entitling him to attachment, notwithstanding damages might be speculative in their nature.

[Ed. Note.—For other cases, see Attachment, Cent. Dig. §§ 285–289; Dec. Dig. ⬤═➤107.]

Appeal from Special Term, New York County.

Action by Ernest Schreiber against the Gem Stopper Company. From an order refusing a motion to vacate an attachment, defendant appeals.   Affirmed.

The opinion of Page, J., at Special Term, is as follows:

The ground urged by the defendant, a foreign corporation, upon this motion to vacate an attachment against its property, is that the moving affidavits do not disclose sufficient evidence from which the court could determine that the plaintiff is presumptively entitled to recover $50,000 from the defendant. The plaintiff's claim is for breach of an alleged contract whereby the defendant made him its sole agent in the city of New York for the selling of tin covers for milk bottles until October, 1918. The damage alleged is the value of the contract, based upon future profits to accrue to the plaintiff, estimated and computed from the profits made by the plaintiff during 17 months in which the contract was carried out. The plaintiff alleges in his affidavits that during the said 17 months he sold to Borden's Condensed Milk Company, pursuant to his contract with the defendant, tin tops at a total price of $55,886.65, for which he paid to the defendant $36,425.16, and paid freight charges amounting to $1,676.58, leaving a profit from his exclusive agency during the said period of 17 months of $17,784.91, or an average monthly profit of $1,046. The plaintiff further alleges, upon information received from the defendant's treasurer, that Borden's Condensed Milk Company had been using milk bottle stoppers manufactured by the defendant for 20 years past, and, upon information and belief, that the said company is still using the defendant's stoppers, and that the defendant is selling them directly to the Borden's Condensed Milk Company in breach of their agreement. The loss of profits for the balance of the term of the agreement is estimated, at the rate of $1,046 per month, to be $50,208, which is stated to be the value of the agreement and measure of plaintiff's damages.

I am of the opinion that the affidavits correctly state the measure of the plaintiff's damages and the evidence which, if substantiated by proof at the trial, will presumptively entitle the plaintiff to recover the sum alleged. Wakeman v. Wheeler & Wilson Mfg. Co., 101 N. Y. 205, 4 N. E. 264, 54 Am. Rep. 676; Dickinson v. Hart, 142 N. Y. 183, 36 N. E. 801; Horton v. Hall & Clark Mfg. Co., 94 App. Div. 404, 88 N. Y. Supp. 73; Schlossberg v. Brody, 160 App. Div. 161, at page 170, 145 N. Y. Supp. 182, especially the opinion of Laughlin, J., dissenting upon another ground. The cases cited by the defend-. ant, showing the measure of damages for breach of a contract for the sale

of goods and the measure of damages for breach of a contract to manufacture goods or machinery, do not apply to the present case, which involves a contract for an exclusive agency in which it is alleged that the defendant agreed not to sell directly to any other persons within the territory named and to refer all orders or inquiries from prospective customers to the plaintiff. While the damages in an action of this kind based upon prospective profits are necessarily somewhat speculative in their nature, I know of no decision which holds that the plaintiff is thereby precluded from availing himself of his remedy by attachment, provided he can show by affidavits facts from which it may be fairly presumed that he will suffer damages in a fixed sum. This, I think, the plaintiff has done.

The motion to vacate the attachment is denied, with $10 costs.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, DOWLING, and HOTCHKISS, JJ.

V. P. Donihee, of New York City, for appellant.

W. M. Geer, Jr., of New York City, for respondent.

PER CURIAM. Order affirmed, with $10 costs and disbursements, on the opinion of Page, J., at Special Term. Order filed.

———

CONTINENTAL SECURITIES CO. et al. v. NEW YORK CENT. R. CO. et al.

(Supreme Court, Appellate Division, Second Department. May 25, 1915.)

1. RAILROADS ☜150—CONSOLIDATION—BOND ISSUE.
    The issuance by a consolidated railroad company of 4 per cent. bonds to be exchanged for 3½ per cent. bonds of one of the constituent companies is not an issuance of bonds against, or as a lien on, a contract for consolidation or merger, contrary to Public Service Commissions Law (Consol. Laws, c. 48) § 55.
    [Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 461, 462; Dec. Dig. ☜150.]

2. RAILROADS ☜150—CONSOLIDATION—BOND ISSUES—STATUTES.
    Public Service Commissions Law, § 55, prohibiting capitalization of any contract for consolidation or lease, or the issuance of bonds against such contract, and Penal Law (Consol. Laws, c. 40) § 668, penalizing a bondholder in a corporation who sells his vote, cannot be construed to apply to a proposal for consolidation of railroad corporations in which 4 per cent. bonds of the consolidated corporations are to be exchanged for 3½ per cent. bonds of one of the constituent companies.
    [Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 461, 462; Dec. Dig. ☜150.]

3. RAILROADS ☜150—CONSOLIDATION—BOND ISSUE.
    A proposal by the directors of railroad companies, looking toward a consolidation of such corporations, that, if the bondholders of one of the constituent companies will agree to the consolidation, the consolidated company will exchange its 4 per cent. bonds for such of the 3½ per cent. bonds of the constituent company as the owners thereof desire to exchange, does not violate Railroad Law (Consol. Laws, c. 49) § 141, providing that the capital stock of a consolidated corporation shall not exceed the sum of the capital stock of the constituent corporations, nor shall any bonds be issued as a consideration for or in connection with such consolidation, when that section is construed with section 142, authorizing